1  WISE GLEICHER
   Noel Wise (SBN 169453)
2      (wise@wisegleicher.com)
   2233 Santa Clara Avenue, Suite #8
3  Alameda, CA  94501
   Telephone:  (510) 747-1725
4  Facsimile:   (510) 747-1724

5  DAVID A. GIANNOTTI, A PROFESSIONAL CORPORATION
   David A. Giannotti (SBN 100779)
6      (david@dagiannotti.com)
   425 N. Maple Drive, Suite 205
7  Beverly Hills, CA 90210
   Telephone:  (310) 385-1318
8  Facsimile:   (310) 275-4097

9  Attorneys for Defendants, Cross-Claimants, and Counter-Claimants
   AMERICAN RACING EQUIPMENT, LLC and AMERICAN RACING
10 EQUIPMENT, INC. (AND AS A SUCCESSOR IN INTEREST TO ART HALE,
   INC. AND AMERICAN MAG, INC.)

11              IN THE UNITED STATES DISTRICT COURT
12       CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

13 | KB GARDENA BUILDING, LLC, a | Case No.:  ED CV 08-600-RWG (PJWx) |
   | California Limited Liability | |
   | Corporation, | |
14 | | |
   | Plaintiffs, | The Honorable Robert W. Gettleman |
15 | v. | |
   | | **DEFENDANT AMERICAN RACING** |
16 | | **EQUIPMENT LLC'S NOTICE OF** |
   | WHITTAKER CORPORATION, a | **MOTION AND MOTION FOR** |
17 | Delaware Corporation; | **SUMMARY JUDGMENT;** |
   | BRASSCRAFT | **MEMORANDUM OF POINTS AND** |
18 | MANUFACTURING COMPANY, a | **AUTHORITIES IN SUPPORT** |
   | Michigan Corporation; BIG "B" | **THEREOF; DECLARATION OF** |
19 | TRANSPORTION, INC., a | **NOEL WISE, ESQ. [*Fed. R. Civ. P. 56*]** |
   | suspended California Corporation; | |
20 | ALPHONSE VANBASTELAAR, an | |
   | individual; INTERNATIONAL | |
21 | TRUCK AND TRANSFER, INC., a | |
   | California Corporation; A&M | |
22 | LUMBER AND BUILDING | ***Filed Concurrently Herewith*** |
   | SUPPLY COMPANY, a business | |
23 | entity, form unknown; A&M | |
   | LUMBER & WRECKING | [Proposed] Statement of Uncontroverted |
24 | COMPANY, a business entity, form | Facts and Conclusions of Law; |
   | unknown; A&M FENCE | [Proposed] Judgment |
25 | COMPANY, a business entity,  form | |
   | unknown; CHROMIZING | |
26 | COMPANY, a suspended California | Date:  August 26, 2010 |
   | corporation; CHROMALLOY | Time:  10:00 a.m. |
27 | AMERICAN CORPORATION, a | Place:  Via Teleconference |
   | Delaware Corporation; | |
28 | | |

1  Estate of ARTHUR H. KAPLAN,
   deceased; ROSE MAY KAPLAN,
2  an individual; STANLEY BLACK,
   an individual; JOYCE BLACK, an
3  individual; KB MANAGEMENT
   COMPANY, a California general
4  partnership; JACK D. BLACK, an
   individual; JANIS (GOLDMAN)
5  BLACK TRUST, a California trust;
   JILL BLACK, an individual; K
6  ASSOCIATES, a California general
   partnership; and A&R
7  MANAGEMENT AND
   DEVELOPMENT CO., a business
8  entity, form unknown ANSEN,
   INC., a suspended California
9  Corporation; AMERICAN RACING
   EQUIPMENT, INC., a Delaware
10 Corporation; AMERICAN RACING
   EQUIPMENT, LLC,

11              Defendants.

12 ────────────────────────────
   AMERICAN RACING
13 EQUIPMENT, LLC,  a Delaware
   Limited Liability Company,

14              Cross Claimant,

15 v.

16
   WHITTAKER CORPORATION, a
17 Delaware Corporation;
   BRASSCRAFT
18 MANUFACTURING COMPANY, a
   Michigan Corporation; BIG "B"
19 TRANSPORTION, INC., a
   suspended California Corporation;
20 ALPHONSE VANBASTELAAR, an
   individual; Estate of ARTHUR H.
21 KAPLAN, deceased; ROSE MAY
   KAPLAN, an individual; STANLEY
22 BLACK, an individual; JOYCE
   BLACK, an individual; JACK D.
23 BLACK, an individual; JILL
   BLACK, an individual; JANIS
24 (GOLDMAN) BLACK TRUST, a
   California trust; KB
25 MANAGEMENT COMPANY, a
   California general partnership; K
26 ASSOCIATES, a California general
   partnership;

27

28

A&R MANAGEMENT AND
DEVELOPMENT CO.,  a business
entity, form unknown, ART HALE,
an individual; ANSEN, INC., a
suspended California Corporation;
and LOUIS SENTER, an individual,

Cross Defendants.

_____

AMERICAN RACING
EQUIPMENT, LLC,  a Delaware
Limited Liability Company,

Counter-Claimant,

v.

KB GARDENA BUILDING, LLC, a
California Limited Liability
Corporation,

Counter Defendant.

TO PLAINTIFF, KB GARDENA BUILDING, LLC AND ALL DEFENDANTS
AND CROSS-DEFENDANTS IN THE ABOVE CAPTIONED MATTER AND
THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 26, 2010 at 10:00 a.m., or as
soon thereafter as counsel may be heard, via teleconference, Defendant
AMERICAN RACING EQUIPMENT, LLC ("American Racing") will move this
Court pursuant to *Fed. R. Civ. P.* 56 for summary judgment against Plaintiff, KB
GARDENA, BUILDING, LLC, Defendant, WHITTAKER CORPORATION and
against all Defendants and Cross-Defendants who have asserted that American
Racing is the successor in interest to Art Hale, Ansen, Inc., or American Mag and
against Cross Defendant ART HALE regarding the issue of indemnification.
This motion is made following the conference of counsel pursuant to Local Rule 7-
3, which took place on July 30, 2010.  Declaration of Noël Wise at ¶ 25.

1   The Motion is based upon this Notice, the attached Memorandum of Points and

2   Authorities, the Statement of Uncontroverted Facts and Conclusions of Law, the

3   Declarations of Noël Wise and David A. Giannotti filed concurrently with this

4   Notice, the Court's file and records in this case and all other matters of which the

5   Court may take judicial notice, and any oral and further written argument and

6   evidence which may be submitted in support of the motion.

7

8

9   DATED:  August 16, 2010                    WISE GLEICHER

10

11

12                                            By: */s/ Noël Wise*
13                                            Noël Wise

14

15

16                                            By:  */s/ David A. Giannotti*
                                              DAVID A. GIANNOTTI, A
17                                            PROFESSIONAL CORPORATION
                                              David A. Giannotti
18
                                              Attorney for Defendants
19                                            AMERICAN RACING EQUIPMENT, INC.
20                                            AMERICAN RACING EQUIPMENT, LLC

21

22

23

24

25

26

27

28

ARE MSJ 081610

1

# TABLE OF CONTENTS

2
**PAGE**

3
I. INTRODUCTION .................................................................................7

4
II. STATEMENT OF FACTS .................................................................8

5
III. ARGUMENT ....................................................................................12

6
      A.    AMERICAN RACING IS NOT THE SUCCESSOR IN

7
           INTEREST TO ART HALE, THE INDIVIDUAL AND
           AMERICAN RACING IS THEREFORE NOT A LIABLE
           PARTY IN THIS ACTION FOR MR. HALE'S PERSONAL

8
           ACTIVITIES AT THE PROPERTY ..................................................15

9
      B.    AMERICAN RACING IS NOT THE SUCCESSOR IN
           INTEREST TO ANSEN, INC AND AMERICAN RACING

10
           IS THEREFORE NOT A LIABLE PARTY IN THIS
           ACTION FOR ANSEN, INC.'S ACTIVITIES AT THE

11
           PROPERTY. .....................................................................................16

12
      C.    AMERICAN RACING IS NOT LIABLE, AS A
           SUCCESSOR IN INTEREST TO AMERICAN MAG, FOR

13
           ACTIVITIES THAT OCCURRED AT THE PROPERTY
           BETWEEN 1975 AND 1977 BECAUSE AMERICAN

14
           MAG DID NOT EXIST AT THAT TIME .........................................17

15
      D.    AMERICAN RACING IS CONTRACTUALLY
           ENTITLED TO INDEMNITY FROM MR. HALE FOR

16
           THE COSTS, EXPENSES, AND/OR LIAIBILITIES
           AMERICAN RACING HAS INCURREND AND WILL

17
           INCUR IN THIS ACTION ................................................................18

18

19
IV. CONCLUSION ..................................................................................22

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**PAGE**

3

**Federal Cases**

4

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242, 249, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ................. 12

5

6

*Celotex Corp. v. Catrett,*
   477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ...................... 12, 13

7

8

9

10

**State Cases**

11

*Hillman v. Leland E. Burns, Inc.,,*
   257 Cal.Rptr. 535, 539 (Cal.App.1989) ............................................................. 15

12

13

*Parsons v. Bristol Dev. Co.,*
   62 Cal.2d 861, 44 Cal.Rptr. 767, 770, 402 P.2d 839, 842 (1965) ...................... 15

14

*Waller v. Truck Insurance Exchange, Inc.,*
   11 Cal.4th 1, 900 P.2d 619, 44 Cal.Rptr. 2d 370 (1995) ............................... 15, 16

15

16

17

**Federal Statutes and Rules**

18

Fed. R. Civ. P. 56(a) ................................................................................................ 12

19

Fed. R. Civ. P. 56(b) ................................................................................................ 12

20

Fed. R. Civ. P. 56(c) ........................................................................................... 12, 13

21

Fed. R. Civ. P. 56(e) ................................................................................................ 12

22

23

24

Section 107 of CERCLA, 42 U.S.C. § 9607 .............................. 13, 14,16, 17, 18, 20

25

26

Section 113 of CERCLA, 42 U.S.C § 9613 ................................ 13, 14, 16, 17 18, 20

27

28

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.**

## **INTRODUCTION**

In this Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") cost recovery and contribution action, Plaintiff KB Gardena, LLC ("KB Gardena" or "Plaintiff") and Defendant Whittaker Corporation ("Whittaker") allege that Defendant American Racing Equipment, LLC ("American Racing") is liable, as a successor in interest, for the release or threatened release of hazardous substances that occurred between approximately March 7, 1975 and March 6, 1977 at an industrial warehouse located at 13720 S. Western Avenue in Gardena, California ("the Property"), during which time Whittaker was the lessee and Ansen, Inc. was Whittaker's sublessee at the Property.

In this motion for summary judgment, American Racing asserts that it is not the successor in interest to Art Hale, the individual ("Mr. Hale") or to Ansen, Inc. In addition there is no CERCLA liability for American Mag at the Property (and therefore no successor liability for American Racing) for activities that occurred in the mid 1970s because American Mag did not exist until 1982.

Plaintiff and Whittaker have alleged that American Racing is a successor in interest to various entities (including Art Hale, Inc.), which Plaintiff and Whittaker contend are liable parties under CERCLA, for activities that occurred between approximately March 7, 1975 and March 6, 1977 at the Property.  American Racing is contractually entitled to indemnity from Mr. Hale for the costs, expenses, and/or liabilities American Racing has incurred and will incur in defending against Plaintiff's and Whittaker's claims in this action.

/ / /

/ / /

/ / /

/ / /

ARE MSJ 081610

## II.

## __STATEMENT OF FACTS__

1.  <u>Corporate History of American Racing's Predecessors Prior to November 4, 1987</u>

Art Hale, Inc. was a California Corporation that was formed on approximately February 2, 1967.  Statement of Uncontroverted Facts ("Facts"), No. 1.  Modern Wheel was a California Corporation that was formed on approximately August 30, 1977.  Fact No. 2.  American Mag, Inc. ("American Mag") was a California Corporation that was formed on approximately July 12, 1982.  Fact No. 3.  Noranda Wheels, Inc. ("Noranda"), was a Delaware Corporation that was formed on approximately October 14, 1987.  Fact No. 4.  By November 4, 1987, Art Hale, Inc. and Modern Wheel were the wholly owned subsidiaries of American Mag. Fact No. 5.

2.  <u>Option Agreement</u>

Mr. Hale entered into an Option Agreement (dated November 4, 1987 and exercised on February 11, 1988) to sell all of the stock of American Mag and thereby all of the capital stock of American Mag's subsidiaries (Art Hale, Inc. and Modern Wheel, collectively referred to in the Option Agreement with other companies, unrelated to this action, as "the Companies") to Noranda Wheels, Inc. Fact No. 6.  The Option Agreement (or "Agreement") is a stock purchase agreement and does not transfer any personal liabilities of Mr. Hale to Noranda.  Fact No. 7.

The Agreement provides the list of real properties that were owned by the Companies as well as the list of properties leased by the Companies.  Fact No. 8. The Property is not referenced anywhere in the Agreement, including in the real property or final lease lists.  Fact No. 9.

In Section 2 of the Agreement, Mr. Hale made representations and warranties regarding "all of the Companies" that were transferred to Noranda pursuant to the Option Agreement.  Fact No. 10.  In Section 2.40 of the Option Agreement, Mr.

Hale represented and warranted:

> [T]o the best of Hale's and Rodman's knowledge and belief after due
> inquiry, neither the Companies nor their agents and affiliates  . . . have
> ever generated, stored, treated, transported, handled, disposed of, or
> released any hazardous substance or solid waste in a manner that
> would give rise to any liability under any statute or governmental
> regulation . . . .

Fact No. 11.  Section 12.1 of the Option Agreement provides that:

> [T]he representations and warranties contained in  . . . Section . . . 2.40
> with respect to environmental protection laws and regulations
> (including the disposal of hazardous substances and toxic wastes) and
> with respect to the generation, storage, treatment, transportation,
> handling, disposal of, or release of any hazardous substance or solid
> waste, shall survive without limitation as to time . . . .

Fact No. 12.

> Section 12.2 of the Option Agreement (titled "Indemnification") states that:

> [Mr.] Hale and Rodman agree to indemnify Noranda . . . against any
> loss, cost, liability, or expense (including, without limitation, costs and
> expenses of litigation other than attorneys' fees) incurred by reason of
> the incorrectness or breach of any of their respective representations,
> warranties, covenants, and agreements contained in this Option
> Agreement . . . .

Fact No. 13.  The contractual obligations in the Option Agreement are triggered
when a third party makes a claim against Noranda, which, if valid, would be a
breach of the representations and warranties made by Mr. Hale.  Fact No. 14.


   3.    <u>Corporate History of American Racing and Its Predecessors After
         February 11, 1988</u>

Noranda changed its name to American Racing Equipment, Inc. on
approximately May 24, 1988.  Fact. No. 15.  In approximately July of 1988, Art
Hale, Inc. and Modern Wheel merged into American Mag and American Mag, in

turn, merged into American Racing Equipment, Inc.  Fact No. 16.   On June 3, 2008, American Racing Equipment, Inc. filed a Certificate of Conversion to a limited liability company, and thereby became American Racing Equipment, LLC, a Limited Liability Company.  Fact No. 17.

4.   Ansen, Inc.

Ansen, Inc. was a California Corporation that was formed on approximately March12, 1975 and was suspended on approximately March 1, 1977.   Fact No. 18. Ansen, Inc. identified its corporate address as 13720 S. Western Ave., Gardena, California – the address of the Property involved in this action.  Fact No. 19. Ansen, Inc. subleased the Property from Whittaker from approximately March 7, 1975 to March 6, 1977 ("the Sublease").  Fact No. 20.  Noranda did not purchase the stock of Ansen, Inc. in the Option Agreement.  Fact No. 21.

5.   Current case

Plaintiff initially filed its Complaint in this action on approximately May 5, 2008, but did not name American Racing as a Defendant.   Fact No. 22.  On November 10, 2009, Plaintiff filed a Second Amended Complaint that, *inter alia*, added American Racing and Ansen, Inc. as Defendants.  Fact No. 23.  In its Second Amended Complaint, Plaintiff alleged that American Racing is the successor in interest to Art Hale, Inc.  Fact No. 24.  The undersigned counsel for American Racing provided Robert Handler of the law firm Ezra Brutzkus Gubner, LLP, counsel for Mr. Hale, with a copy of Plaintiff's Second Amended Complaint on November 20, 2009.  Fact No. 25.  The undersigned counsel accepted service for American Racing and answered the Second Amended Complaint on December 4, 2009.  Fact No. 26.  Plaintiff also served its Second Amended Complaint on Ansen, Inc. at the law firm of Ezra Brutzkus Gubner, LLP Fact No. 27.  Ezra Brutzkus Gubner, LLP acknowledged receipt of service on March 1, 2010, but has not filed a responsive pleading on Ansen, Inc.'s behalf.  Fact No. 28.

On or about June 3, 2010, Whittaker filed its Second Amended Answer,

1  Cross Claims, Third Party Claims and Counterclaims ("Whittaker's Second
2  Amended Third Party Claims"), that, *inter alia*, added Mr. Hale, Art Hale, Inc. and
3  American Mag, Inc. as Third Party Defendants.  Fact No. 29.  In Whittaker's
4  Second Amended Third Party Claims, Whittaker lumped these distinct legal entities
5  into a single allegation asserting that "Art Hale, Art Hale, Inc., Art Hale, Inc. dba
6  U.S. Mag Wheels, Modern Wheel, and American Mag, Inc." all simultaneously
7  conducted wheel manufacturing operations at the Property, during which time
8  hazardous substances were released into the environment.  Fact No. 30.  The
9  undersigned counsel for American Racing accepted service for American Mag and
10  Art Hale, Inc. on or about July 7, 2010; American Racing, as the successor in
11  interest to Art Hale, Inc. and American Mag answered Whittaker's Second
12  Amended Third Party Claims on July 26, 2010.   Fact No. 31.  Mr. Hale answered
13  Whittaker's Second Amended Third Party Claims (through his counsel Robert
14  Handler and Todd Lander of Ezra  Brutzkus Gubner, LLP) on August 5, 2010.  Fact
15  No. 32.
16      American Racing has incurred costs and expenses in defending this matter,
17  including but not limited to the costs and expenses of:  investigation, expert
18  consultants, mediation, court reporters and transcripts, travel costs and copying and
19  shipping costs.  Fact No. 33.  In numerous letters and correspondence to Mr. Hale,
20  American Racing has demanded indemnification, pursuant to the Option
21  Agreement, for the liability, costs and expenses American Racing has incurred and
22  will or may incur in this action.  Fact No. 34.  To date, Mr. Hale has denied his
23  contractual obligation to indemnify American Racing.  Fact No. 35.
24  / / /
25  / / /
26  / / /
27  / / /
28

# III.

# ARGUMENT

A claiming or defending party may, at any time until 30 days after the close of discovery, move for summary judgment on all, or part, of the claims at issue in the action.  Fed. R. Civ. P. 56(a) and (b).  Summary judgment is proper if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In a motion for summary judgment, the moving party has the initial burden of informing the Court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The moving party can meet its burden of proof by pointing out the absence of evidence from the non-moving party; the moving party need not disprove the other party's case.  *Id.* at 325.  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party.  *Anderson*, 477 U.S. at 249. A factual dispute is material only if it might affect the outcome of the suit under governing law.  *Id.* at 248.  To defeat a motion for summary judgment, the non-moving party cannot rest on the pleadings, but rather, must go beyond the pleadings and present "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

In *Celotex*, the United States Supreme Court stated that, "one of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." *Celotex* 477 U.S. at 323, 324.  Thus,

1  summary judgment is not disfavored, but rather an integral part of federal procedure
2  and the "just, speedy and inexpensive determination of every action."  Fed R. Civ.
3  P. 56(c); *Celotex*, 477 U.S. at 327.

4       The primary issue in the underlying case, as it applies to American Racing
5  and its predecessors, is whether American Racing is liable, as a successor in
6  interest, for activities that occurred between approximately March 7, 1975 and
7  March 6, 1977 at an industrial warehouse located at the Property, during which time
8  Whittaker was the lessee and Ansen, Inc. was Whittaker's sublessee at the Property.
9  Plaintiff and Whittaker allege that they are entitled to cost recovery and/or
10 contribution from American Racing pursuant to section 107(a) of CERCLA, 42
11 U.S.C. § 9607(a), which states that, "any person who at the time of disposal of any
12 hazardous substance owned or operated any facility at which such hazardous
13 substances were disposed of . . . shall be liable for . . . any other necessary costs of
14 response incurred by any other person consistent with the national contingency plan
15 . . . ."  Whittaker has also specifically raised a claim for contribution under section
16 113(f) of CERCLA, 42 U.S.C § 9613(f), which states in part:

17
18       Any person may seek contribution from any other person who is liable
         or potentially liable under section 9607(a) of this title, during or
19       following any civil action under section 9606 of this title or under
20       section 9607(a) of this title. Such claims shall be brought in
         accordance with this section and the Federal Rules of Civil Procedure,
21       and shall be governed by Federal law. In resolving contribution claims,
22       the court may allocate response costs among liable parties using such
         equitable factors as the court determines are appropriate.
23
24       Plaintiff and Whittaker assert that the Property is a "facility" where
25  hazardous substances (including perchloroethylene ("PCE"), trichloroethylene
26  ("TCE") and various heavy metals) were disposed, generated, stored and/or used.
27  Plaintiff and Whittaker do not assert that American Racing is a "person" that
28  directly caused the release or threatened release of hazardous material at the

Property.  Rather the only potential liability that American Racing, which did not exist until 1988, could potentially have in this action is as a successor in interest to an entity that allegedly operated at the Property between March 7, 1975 and March 6, 1977.

The first two arguments set forth below establish that American Racing is not the successor in interest to two of the parties that Plaintiff and Whittaker allege operated at the Property between approximately 1975 and 1977 (Art Hale, the individual and Ansen, Inc.), and American Racing is therefore not liable for past or future remediation costs at the Property on behalf of either of those parties.

In the third argument, American Racing asserts that neither American Mag (nor American Racing) is a liable party, pursuant to section 107 or 113 of CERCLA, 42 U.S.C. § 9607, 9613, as asserted by Whittaker, for activities that American Mag allegedly engaged in at the Property between approximately 1975 and 1977 because American Mag did not become a corporate entity until 1982. Therefore, American Mag could not have conducted operations that caused the release or threatened release of hazardous substances at the Property five years prior to American Mag's existence.

In the fourth argument, American Racing seeks a judgment from this Court against Mr. Hale regarding contractual indemnity.  Specifically, because Plaintiff and Whittaker have alleged that American Racing is a successor in interest to various entities (including Art Hale, Inc.) which Plaintiff and Whittaker contend are potentially responsible parties under CERCLA for activities that occurred between approximately March 7, 1975 and March 6, 1977 at the Property, American Racing is contractually entitled to immediate indemnity from Mr. Hale for the costs, expenses, and/or liabilities American Racing has incurred as well as a declaratory judgment for the costs, expenses, and/or liabilities American Racing may and will incur in this action.

/ / /

ARE MSJ 081610

**A.   AMERICAN RACING IS NOT THE SUCCESSOR IN INTEREST TO ART HALE, THE INDIVIDUAL AND AMERICAN RACING IS THEREFORE NOT A LIABLE PARTY IN THIS ACTION FOR MR. HALE'S PERSONAL ACTVITIES AT THE PROPERTY**

The interpretation and construction of a written contract is a question of law. *Waller v. Truck Insurance Exchange, Inc.*, 11 Cal.4[th] 1, 900 P.2d 619, 44 Cal.Rptr. 2d 370 (1995); *Parsons v. Bristol Dev. Co.*, 62 Cal.2d 861, 44 Cal.Rptr. 767, 770, 402 P.2d 839, 842 (1965); *Hillman v. Leland E. Burns, Inc.*, 257 Cal.Rptr. 535, 539 (Cal.App.1989).  Whatever liability American Racing may possibly have in this case stems from one, and only one, document – the written contract between Mr. Hale and Noranda Wheels, which was dated November 4, 1987 and exercised on February 11, 1988 (the "Option Agreement").  Fact No. 6.  The Option Agreement is a stock purchase agreement.  Fact No. 7.  There is nothing whatsoever within the Option Agreement that transfers any personal liabilities of Mr. Hale, to Noranda. *See*, Fact Nos. 6-7.  Thus, whatever liability Mr. Hale may personally have as a result of his activities at the Property between March 7, 1975 and March 6, 1977, those liabilities remain with Mr. Hale.

Whittaker lumped various entities into a single allegation asserting that "Art Hale, Art Hale, Inc., Art Hale, Inc. dba U.S. Mag Wheels, Modern Wheel, and American Mag, Inc." all simultaneously conducted wheel manufacturing operations at the Property, during which time hazardous substances were released into the environment.  Fact No. 30.  The entities above are distinct legal entities – including businesses that were incorporated decades apart – some of which were not incorporated until years after the alleged liability for activities that were conducted between 1975 and 1977 at the Property.  *See*, Fact Nos. 1-3.  As discussed above, the plain language of the Option Agreement did not transfer Mr. Hale's personal liabilities to Noranda (which was a company that was not formed until 1987 and

changed its name to American Racing on May 24, 1988).  Fact Nos. 3, 4, 6, 7, 15.
Consequently, American Racing is not the successor in interest to Mr. Hale and
American Racing is not a liable party under section 107 or section 113 of CERCLA
for Mr. Hale's activities at the Property.

**B.    AMERICAN RACING IS NOT THE SUCCESSOR IN INTEREST TO ANSEN, INC. AND AMERICAN RACING IS THEREFORE NOT A LIABLE PARTY IN THIS ACTION FOR ANSEN, INC.'S ACTIVITIES AT THE PROPERTY**

Contract interpretation is a question of law.  *Waller*, 11 Cal.4th at 1.  As noted above, there is a single, controlling document that dictates, what, if any liability American Racing has in this case – the Option Agreement.  Fact No. 6.  The Option Agreement is a stock purchase agreement.  Fact No. 7.

In the Option Agreement, Mr. Hale sold all of the stock of American Mag and thereby all of the capital stock of American Mag's subsidiaries (Art Hale, Inc. and Modern Wheel, collectively referred to in the Option Agreement with other companies, unrelated to this action, as "the Companies") to Noranda.  Fact No. 6. There is nothing whatsoever within the Option Agreement that mentions Ansen, Inc., let alone transferred any stock or liabilities associated with Ansen, Inc. to Noranda.  *See*, Fact Nos. 6, 7, 21.  Similarly, the Option Agreement provides the list of real properties that were owned by the Companies as well as the list of properties leased by the Companies.  Fact No. 8.  The Property is not referenced anywhere in the Agreement as having transferred to Noranda, including in the real property or final lease lists.  Fact No. 9.

According to the historic California corporate records maintained by the Secretary of State, Ansen, Inc. was a California Corporation that was formed on approximately March 12, 1975 and was suspended on approximately March 1, 1977. Fact No. 18.  Ansen, Inc. identified its corporate address as 13720 S. Western Ave.,

Gardena, California – the address of the Property involved in this action.  Fact No. 19.  Ansen, Inc. subleased the Property from Whittaker from approximately March 7, 1975 to March 6, 1977.  Fact No. 20.

Pursuant to the plain language of the Option Agreement, Art Hale did not sell the stock of Ansen, Inc. to Noranda (which changed its name to American Racing on May 24, 1988).  Fact Nos. 15, 21.  As a result, American Racing is not the successor in interest to Ansen, Inc. and American Racing is not a liable party under section 107 or section 113 of CERCLA for Ansen, Inc.'s activities at the Property.

**C.   AMERICAN RACING IS NOT LIABLE, AS A SUCCESSOR IN INTEREST TO AMERICAN MAG, FOR ACTIVITIES THAT OCCURRED AT THE PROPERTY BETWEEN 1975 AND 1977 BECAUSE AMERICAN MAG DID NOT EXIST AT THAT TIME**

In the Option Agreement, Mr. Hale sold all of the issued and outstanding shares of American Mag's capital stock to Noranda.  Fact No. 6.  As a result, American Racing acknowledges that it is the successor in interest to American Mag.

Whittaker alleged, in its Second Amended Third Party Claims, that from approximately 1975 to 1978 American Mag conducted wheel manufacturing operations at the Property and that such operations used various hazardous substances (including TCE and PCE), which were released into the environment. Fact No. 30.  As a result, Whittaker claims it is entitled to cost recovery and contribution for response costs at the Property under sections 107 and 113 of CERCLA, 42 U.S.C. § 9607 and 9613 against American Mag.  Fact No. 29.

American Mag did not exist between 1975 and 1978.  Fact No. 3. American Mag was not formed until its articles of incorporation were filed in California on approximately July 12, 1982.  Fact No. 3.  Consequently, neither American Mag,

nor its successor American Racing, is liable pursuant to section 107 or 113 of CERCLA, 42 U.S.C. § 9607and 9613, for the release or threatened release of hazardous materials at the Property in the mid-1970s as a result American Mag's manufacturing operations, as alleged by Whittaker.

### D. AMERICAN RACING IS CONTRACTUALLY ENTITLED TO INDEMNITY FROM MR. HALE FOR THE COSTS, EXPENSES, AND/OR LIAIBILITIES AMERICAN RACING HAS INCURREND AND WILL INCUR IN THIS ACTION

#### 1. Background regarding Mr. Hale's Representations, Warranties and Indemnity Obligations Under the Option Agreement

When Mr. Hale sold all of the issued and outstanding shares of American Mag's capital stock to Noranda in the Option Agreement, Art Hale, Inc. was a listed subsidiary of American Mag and was included as one of the Companies which had all of its stock transferred to Noranda.  Fact No. 6.

In Section 2 of the Option Agreement, Mr. Hale made representations and warranties regarding "all of the Companies" that were transferred to Noranda.  Fact No. 10.  In Section 2.40 of the Option Agreement, Mr. Hale represented and warranted:

> [T]o the best of Hale's and Rodman's knowledge and belief after due inquiry, neither the Companies nor their agents and affiliates  . . . have ever generated, stored, treated, transported, handled, disposed of, or released any hazardous substance or solid waste in a manner that would give rise to any liability under any statute or governmental regulation . . . .

/ / /

1    Fact No. 11.  Section 12.1 of the Option Agreement provides that:

2
3            [T]he representations and warranties contained in  . . . Section . . . 2.40
             with respect to environmental protection laws and regulations
4            (including the disposal of hazardous substances and toxic wastes) and
             with respect to the generation, storage, treatment, transportation,
5            handling, disposal of, or release of any hazardous substance or solid
             waste, shall survive without limitation as to time . . . .
6

7    Fact No. 12.

8            Because the Option Agreement included Art Hale, Inc. as one of the listed

9    "Companies", Mr. Hale represented and warranted in Section 2.40 of the Option

10   Agreement that to the best of his knowledge and belief after due inquiry, Art Hale,

11   Inc. had not ever "generated, stored, treated, transported, handled, disposed of, or

12   released any hazardous substance or solid waste in a manner that would give rise to

13   any liability under any statute or governmental regulation . . . ."  Fact No. 11.

14   Pursuant to Section 12.1 of the Option Agreement, Mr. Hale's representation and

15   warranty regarding Art Hale, Inc. survives to this day. Fact No. 12.

16           Section 12.2 of the Option Agreement (titled "Indemnification") specifically

17   states that:

18           [Mr.] Hale and Rodman agree to indemnify Noranda . . . against any
             loss, cost, liability, or expense (including, without limitation, costs and
19           expenses of litigation other than attorneys' fees) incurred by reason of
             the incorrectness or breach of any of their respective representations,
20           warranties, covenants, and agreements contained in this Option
21           Agreement . . . .
22

23   Fact No. 13.

24           The contractual obligations in the Option Agreement are triggered when a

25   third party makes a claim against Noranda, which, if valid, would be a breach of the

26   representations and warranties made by Mr. Hale.  Fact No. 14.

27   / / /

28   / / /

2.   Plaintiff and Whittaker Have Made Claims That Art Hale, Inc. is Liable Pursuant to CERCLA for the Release or Threatened Release of Hazardous Substances at the Property

On November 10, 2009, Plaintiff filed a Second Amended Complaint that, *inter alia*, added American Racing and Ansen, Inc. as Defendants and alleged that American Racing is liable pursuant to section 107 of CERCLA, 42 U.S.C. § 9607, as the successor in interest to Art Hale, Inc. for the release or threatened release of hazardous materials as a result of wheel manufacturing operations at the Property between approximately 1975 and 1977.   Fact No. 23.  The undersigned counsel for American Racing provided Robert Handler of the law firm Ezra Brutzkus Gubner, LLP, counsel for Mr. Hale, with a copy of Plaintiff's Second Amended Complaint on November 20, 2009.  Fact No. 25.  Plaintiff also served its Second Amended Complaint on Ansen, Inc. at the law firm of Ezra Brutzkus Gubner, LLP, which acknowledged receipt of service on March 1, 2010.  Fact Nos. 27, 28.

On or about June 3, 2010, Whittaker filed its Second Amended Third Party Claims that, *inter alia*, added Mr. Hale, Art Hale, Inc. and American Mag, Inc. as Third Party Defendants and asserted that all of those parties were liable pursuant to sections 107 and 113 of CERCLA, 42 U.S.C. § 9607, 9613 for the release or threatened release of hazardous substances at the Property between approximately 1975 and 1978.  Fact No. 29.  Mr. Hale answered Whittaker's Second Amended Third Party Claims (through his counsel Robert Handler and Todd Lander of Ezra Brutzkus Gubner, LLP) on August 5, 2010.  Fact No. 32.

3.   Plaintiff's and Whittaker's CERCLA Claims Against Art Hale, Inc. Triggered Mr. Hale's Indemnity Obligations Under the Option Agreement

Although there is no credible evidence that has been put forward by any party to this action that any entity other than Ansen, Inc. (the only subleasee of Whittaker), conducted operations at the Property between approximately March 7,

1975 and March 6, 1977 (and, as stated above, American Racing is not a successor
to Ansen, Inc.), for the purposes of this Motion for Summary Judgment, it is not
necessary for this Court to consider those facts.  Instead, when assessing whether
Mr. Hale owes an indemnity obligation to American Racing, this Court can and
should limit its inquiry to the third party claims that have been made by Plaintiff
and Whittaker and to the plain language of the Option Agreement itself.

Mr. Hale's representations in Section 2.40 of the Option Agreement are
extremely broad; he represents not only that no release of hazardous substances
occurred, but also that the Companies never stored, disposed, generated or treated
hazardous substances in a manner that would give rise to any liability under any
statute or governmental regulation.  Fact No. 11.  Section 2.40 of the Option
Agreement (combined with the unlimited life of Mr. Hale's representations in
Section 12.1) unequivocally place the risk of the Companies' use, storage and
disposal of hazardous substances, prior to February 11, 1988 (the date the Option
Agreement was exercised), on Mr. Hale.  Fact Nos. 11-12.  Put another way,
Noranda did not bargain for, or assume the risk of, liabilities for the use or disposal
of hazardous substances while the Companies were operated by Mr. Hale.

The bottom line is that the Option Agreement entitles American Racing to
indemnity from Art Hale now because if the environmental contamination claims at
the Property as alleged by Plaintiff and Whittaker are correct, and Art Hale, Inc.'s
operations caused the release of hazardous substances at the Property, then, at a
minimum, the warranties and representations made by Mr. Hale were "incorrect"
under the plain language of Section 2.40 of the Option Agreement.  If the Plaintiffs
and Whittaker are ultimately unable to prove their allegations against Art Hale, Inc.
(and only Ansen, Inc. operated at the Property during the 1975-1977 timeframe)
then American Racing should be dismissed from this action because it is not the
successor of Ansen, Inc. as explained in argument B above; however, American
Racing is still entitled to indemnification from Art Hale until such time that

1   American Racing is no longer incurring costs associated with defending against the

2   claims alleged by Plaintiff and Whittaker.

3           4.    American Racing is Contractually Entitled to Indemnification
                  from Mr. Hale for the Costs and Expenses American Racing has
4                 Incurred and Will Incur in Defending This Matter

5

6           American Racing has incurred costs and expenses in defending this matter,

7   including but not limited to the costs and expenses of:  investigation, expert

8   consultants, mediation, court reporters and transcripts, travel costs and copying and

9   shipping costs.  Fact No. 33.  In numerous letters and correspondence to Mr. Hale,

10  American Racing has demanded indemnification, pursuant to the Option

11  Agreement, for the liability, costs and expenses American Racing has incurred and

12  will or may incur in this action.  Fact No. 34.  To date, Mr. Hale has denied his

13  contractual obligation to indemnify American Racing in this action.  Fact No. 35.

14          Based on the foregoing, as a matter of law, American Racing is contractually

15  entitled to immediate indemnity from Mr. Hale for the costs, expenses, and/or

16  liabilities American Racing has incurred as well as a declaratory judgment for the

17  costs, expenses, and/or liabilities American Racing may and will incur in defending

18  this action.

19                              **IV.**

20                          **CONCLUSION**

21

22          American Racing respectfully requests that this Court issue an Order granting

23  American Racing's motion for summary judgment, holding that: 1)  American

24  Racing is not a liable party in this action, under CERCLA, as a successor in interest

25  to Mr. Hale;  2) American Racing is not a liable party in this action, under

26  CERCLA, as a successor in interest to Ansen, Inc.; 3) American Mag (and therefore

27  American Racing) is not liable, under CERCLA, for activities that American Mag

28  allegedly engaged in at the Property in the mid 1970s, because those activities pre-

1   date American Mag's existence as a corporate entity; and 4) American Racing is

2   contractually entitled to indemnity from Mr. Hale for

3   the costs, expenses, and/or liabilities American Racing has incurred as well as a

4   declaratory judgment for the costs, expenses, and/or liabilities American Racing

5   may and will incur in defending this action.

6

7   DATED:  August 16, 2010          WISE GLEICHER

8                                    By: */s/ Noël Wise*

9                                    Noël Wise

10

11                                   By:  */s/ David A. Giannotti*

12                                   DAVID A. GIANNOTTI, A
                                     PROFESSIONAL CORPORATION
                                     David A. Giannotti

13

14                                   Attorney for Defendants

15                                   AMERICAN RACING EQUIPMENT, INC.
                                     AMERICAN RACING EQUIPMENT, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

# **DECLARATION OF NOËL WISE**

I, Noël Wise, declare as follows:

    1.    That I am an attorney duly licensed to practice law before all courts of the State of California and the United States District Court in and for the Central District of California, and am a partner with the law firm of WISE GLEICHER, attorneys of record for Defendant, American Racing Equipment, LLC.

    2.    That if called upon to testify, I could and would do so competently based upon my personal knowledge of the facts as stated herein.

    3.    Attached as Exhibit "A" is a true and correct copy of the November 4, 1987 Option Agreement (exercised on February 11, 1988) between, *inter alia*, Mr. Art Hale and Noranda Wheels, Inc.

    4.    Attached as Exhibit "B" is a true and correct copy of the Articles of Incorporation of Art Hale, Inc. and Certificate of Ownership Merging Art Hale, Inc. into American Mag, Inc.

    5.    Attached as Exhibit "C" is a true and correct copy of the California Secretary of State Business Entity Detail for Art Hale, Inc.

    6.    Attached as Exhibit "D" is a true and correct copy of the California Secretary of State Business Entity Detail for Modern Wheel.

    7.    Attached as Exhibit "E" is a true and correct copy of the California Secretary of State Business Entity Detail for American Mag, Inc.

    8.    Attached as Exhibit "F" is a true and correct copy of the Restated Certificate of Incorporation of Noranda Wheels, Inc.

    9.    Attached as Exhibit "G" is a true and correct copy of the Certificate of Ownership Merging Modern Wheel into American Mag, Inc.

    10.    Attached as Exhibit "H" is a true and correct copy of the Certificate of Ownership Merging American Mag, Inc. into American Racing Equipment, Inc.

    11.    Attached as Exhibit "I" is a true and correct copy of the June 3, 2008 State of Delaware Certificate of Conversion from a Corporation to a Limited

Liability Company Pursuant to Section 18-214 of the Limited Liability Act.

12.   Attached as Exhibit "J" is a true and correct copy of the June 3, 2008 Certificate of Formation of American Racing Equipment, LLC.

13.   Attached as Exhibit "K" is a true and correct copy of the Articles of Incorporation of Ansen, Inc.

14.   Attached as Exhibit "L" is a true and correct copy of the California Secretary of State Business Entity Detail for Ansen, Inc.

15.   Attached as Exhibit "M" is a true and correct copy of the CT Lien Solutions Business Entity Report for Ansen, Inc.

16.   Attached as Exhibit "N" is a true and correct copy of the March 7, 1975 Sublease between Whittaker Corporation and Ansen, Inc.

17.   Attached as Exhibit "O" is a true and correct copy of the Plaintiff's Complaint (without original exhibits).

18.   Attached as Exhibit "P" is a true and correct copy of the Plaintiff's Second Amended Complaint (without original exhibits).

19.   Attached as Exhibit "Q" is a true and correct copy of the Declaration of David Giannotti, Esq.

20.   Attached as Exhibit "R" is a true and correct copy of American Racing Equipment, LLC's Answer to Plaintiff's Second Amended Complaint.

21.   Attached as Exhibit "S" is a true and correct copy of the Notice and Acknowledgment of Receipt of Summons and Complaint from Ezra Brutzkus Gubner, LLP, for receipt of Plaintiff's Second Amended Complaint.

22.   Attached as Exhibit "T" is a true and correct copy of Defendant Whittaker Corporation's Second Amended Answer, Cross Claims, Third Party Claims and Counterclaims.

23.   Attached as Exhibit "U" is a true and correct copy of American Racing Equipment, LLC's Amended Answer to Whittaker Corporation's Second Amended Answer, Cross Claims, Third Party Claims and Counterclaims.

24.     Attached as Exhibit "V" is a true and correct copy of Mr. Hale's Answer to Whittaker Corporation's Second Amended Answer, Cross Claims, Third Party Claims and Counterclaims.

25.     On July 30, 2010, pursuant to Local Rule 7-3, a conference was held with all counsel in this matter to discuss the substance and potential resolution of this motion.

Executed on this 16th day of August, 2010 at Los Angeles, California.

*/s/ Noël Wise*
Noël Wise