ROBERT L. HANDLER - Bar No. 90306
TODD M. LANDER - Bar No. 173031
DAVID A. TASHROUDIAN - Bar No. 266718
EZRA BRUTZKUS GUBNER LLP
21650 Oxnard Street, Suite 500
Woodland Hills, CA 91367
Telephone: 818.827.9000
Facsimile: 818.827.9099
Email:   rhandler@ebg-law.com
         tlander@ebg-law.com
         dtashroudian@ebg-law.com

DONALD C. NANNEY - Bar No. 62235
FRANK GOOCH III - Bar No. 70996
GILCHRIST & RUTTER PROFESSIONAL CORPORATION
1299 Ocean Avenue, Suite 900
Santa Monica, CA 90401
Telephone: 310.393.4000
Facsimile: 310.394.4700
Email:   dnanney@gilchristrutter.com
         fgooch@gilchristrutter.com

Attorneys for Cross-Defendant
ART HALE, an individual

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KB GARDENA BUILDING, LLC, a California Limited Liability Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>WHITTAKER CORPORATION, a Delaware Corporation, BRASSCRAFT MANUFACTURING COMPANY, a Michigan Corporation; BIG "B" TRANSPORTION, INC., a suspended California Corporation, ALPHONSE VANBASTELAAR, an individual, INTERNATIONAL TRUCK AND TRANSFER, INC., a California Corporation; A&M LUMBER AND BUILDING SUPPLY COMPANY, a business entity, form unknown; A&M LUMBER & WRECKING COMPANY, a business entity, form unknown; A&M FENCE COMPANY, a business entity, form unknown; CHROMIZING COMPANY, a | Case No. EDCV08-0600 RWG (JCRx)<br><br>**CROSS-DEFENDANT ART HALE'S SEPARATE STATEMENT OF ADDITIONAL FACTS IN DISPUTE AND CONCLUSIONS OF LAW IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**<br><br>Judge Assigned: Hon. Robert W. Gettleman<br><br>[Concurrently filed with: Opposition to Motion for Summary Judgment; Responsive Statement of Genuine Issues; Declaration of Art Hale, Jr.; Declaration of Anthony Cincotta; Declaration of Todd M. Lander; and Declaration of Robert L. Handler] |

-1-
SEPARATE STATEMENT OF ADDITIONAL FACTS IN DISPUTE AND CONCLUSIONS OF LAW
325153 v.2/2369.005

| | |
|---|---|
| 1 | suspended California corporation; CHROMALLOY AMERICAN |
| 2 | CORPORATION, a Delaware Corporation; Estate of ARTHUR H. |
| 3 | KAPLAN, deceased; ROSE MAY KAPLAN, an individual; STANLEY |
| 4 | BLACK, an individual; JOYCE BLACK, an individual; KB |
| 5 | MANAGEMENT COMPANY, a California general partnership; JACK |
| 6 | D. BLACK, an individual; JANIS (GOLDMAN) BLACK TRUST, a |
| 7 | California Trust; JILL BLACK, an individual; K ASSOCIATES, a |
| 8 | California general partnership; and A&R MANAGEMENT AND |
| 9 | DEVELOPMENT CO., a business entity, form unknown ANSEN, INC., a |
| 10 | suspended California Corporation; AMERICAN RACING EQUIPMENT, |
| 11 | INC., a Delaware Corporation; AMERICAN RACING EQUIPMENT, |
| 12 | LLC |
| 13 | Defendants. |
| 14 | AMERICAN RACING EQUIPMENT, LLC, a Delaware Limited Liability |
| 15 | Company, |
| 16 | Cross Claimant, |
| 17 | v. |
| 18 | WHITTAKER CORPORATION, a Delaware corporation; BRASSCRAFT |
| 19 | MANUFACTURING COMPANY, a Michigan Corporation; BIG "B" |
| 20 | TRANSPORTATION, INC., a suspended California Corporation; |
| 21 | ALPHONSE VANBASTELAAR, an individual; Estate of ARTHUR H. |
| 22 | KAPLAN, deceased; ROSE MAY KAPLAN, an individual; STANLEY |
| 23 | BLACK, an individual; JOYCE BLACK, an individual; JACK D. |
| 24 | BLACK, an individual; JILL BLACK, an individual; JANIS (GOLDMAN) |
| 25 | BLACK TRUST, a California trust; KB MANAGEMENT COMPANY, a |
| 26 | California general partnership; K ASSOCIATES, a California general |
| 27 | partnership; and A&R MANAGEMENT AND |
| 28 | DEVELOPMENT CO., a business |

-2-
SEPARATE STATEMENT OF ADDITIONAL FACTS IN DISPUTE AND CONCLUSIONS OF LAW
325153 v.2/2369.005

| | |
|---|---|
| entity, form unknown, ART HALE, an individual; ANSEN, INC., a suspended California Corporation; LOUIS SENTER, an individual. | |
| Cross Defendants | |
| AMERICAN RACING EQUIPMENT, LLC a Delaware Limited Liability Company, | |
| Counter-Claimant, | |
| v. | |
| KB GARDENA BUILDING, LLC, a California Limited Liability Corporation, | |
| Counter Defendant | |

## STATEMENT OF ADDITIONAL FACTS IN DISPUTE AND CONCUSIONS OF LAW

Cross-Defendant Art Hale ("Cross-Defendant"), submits this Separate Statement of Additional Facts in Dispute and Conclusions of Law in support of his Opposition to the Motion for Summary Judgment filed herein by Defendants, Cross-Claimants, and Counter-Claimants American Racing Equipment, LLC and American Racing Equipment, Inc. ("Cross-Claimants").

///
///
///
///
///
///

## STATEMENT OF ADDITONAL FACTS IN DISPUTE

| NO. | ADDITIONAL FACTS IN DISPUTE | EVIDENCE |
|---|---|---|
| 1. | Art Hale, Inc. ("AHI") manufactured "mag" wheels for auto companies, such as General Motors and Chrysler. | Deposition of Art Hale, Sr. ("Hale Depo"), (Pg)15:11-16:14. |
| 2. | Art Hale, Sr.'s ("Hale") primary role and responsibility with AHI was that of a salesman. | Hale Depo., 42:18-24; 43:15-16; 117:10-25. |
| 3. | Hale built AHI into a highly successful manufacturer during the late 1960s and early 1970s. | Hale Depo., 42:18-24; 43:15-16; 117:10-25. |
| 4. | Hale estimates that, around the time he acquired the assets of Whittaker Corporation's ("Whittaker") automotive engineering division in 1975, AHI was generating approximately $10 million a year in sales. | Hale Depo., 20:13-23 |
| 5. | Whittaker took occupation of the property located at 13720 W. Western Avenue in Gardena, California (the "Property") in 1972, under the terms of a lease with the then owners. | KB Gardena Building, LLC Mediation Brief, 4:20-21 |

-4-
SEPARATE STATEMENT OF ADDITIONAL FACTS IN DISPUTE AND CONCLUSIONS OF LAW
325153 v.2/2369.005

| | | |
|---|---|---|
| 6. | Whittaker devoted occupation of the Property principally to the manufacturing of automotive wheels and other parts through a division named Ansen Automotive Division ("Ansen Automotive.") | KB Gardena Building, LLC Mediation Brief, 4:20-21; 5:19-22 |
| 7. | By March 1975, however, Ansen Automotive was apparently experiencing financial difficulties, and Hale was interested in acquiring the Ansen name and some of the parts being used at the Property. | Deposition of Art Hale, 26:24-25; 27:1-11 |
| 8. | Hale and others therefore formed Ansen, Inc. ("Ansen") to acquire those assets. | Agreement of Purchase and Sale dated March 12, 1975, pg. 1, WHI 00002277 |
| 9. | Ansen was incorporated on March 12, 1975, and executed a purchase and sales agreement the same day transferring the assets of Ansen Automotive to the newly formed company. | Articles of Incorporation of Ansen, Inc.; Agreement of Purchase and Sale dated March 12, 1975, WHI 00002277 – WHI 00026321 |
| 10. | The total purchase price paid by Ansen for the purchase of Ansen Automotive was $500,000, for which AHI served as guarantor. | Agreement of Purchase and Sale dated March 12, 1975, pgs. 3-4, WHI 00002279 – WHI 0002279; Guaranty dated March 12, 1975, WHI 00002504 – 2507 |

| | | |
|---|---|---|
| 11. | Ansen Automotive had not manufactured wheels in the same manner as Hale's company, and thus, upon taking over operations at the Property in 1975, Ansen promptly liquidated most of the hard assets and remaining equipment and proceeded to manufacture wheels using its own processes. | Deposition of Art Hale, 29:5-23; 32:3-24 |
| 12. | Ansen permanently terminated operations in March 1977. | Declaration of Art Hale, Jr., 4:9-12; 5:1 |
| 13. | Ansen has been defunct since 1977, and neither it nor any other entity in which Hale had any interest has conducted any operations at the Property in the past thirty-three years. | Declaration of Art Hale, Jr., 4:9-12; 5:1 |
| 14. | Ansen Engineering's trademarks and other intellectual property were among the assets sold – hence, the newly created company could operate under the name "Ansen." | Agreement of Purchase and Sale dated March 12, 1975, pgs. 1-2, WHI 00002277 – WHI 0002278 |
| 15. | Modern Wheel was formed in August 1977, and American Mag, Inc. ("America Mag") in July 1982. | California Secretary of State Business Entity Detail for Modern Wheel, Exhibit D, ARE MSJ; California Secretary of State Business Entity |

| | | | |
|---|---|---|---|
| | | | Detail for American Mag, Inc., Exhibit E, ARE MSJ |
| | 16. | As of late 1987, AHI and Modern Wheel were wholly owned subsidiaries of American Mag. | Option Agreement dated November 4, 1987, pg. 7, Exhibit A, ARE MSJ |
| | 17. | Hale was the sole shareholder of American Mag as of late 1987. | Option Agreement dated November 4, 1987, pg. 7, Exhibit A, ARE MSJ |
| | 18. | By way of the agreement between Noranda Wheels, Inc. ("Noranda") and Hale (the "Option Agreement"), Noranda acquired the option to buy the stock of American Mag and AHI – but not Ansen – from Hale. The Option Agreement dated November 4, 1987, granted Noranda an option to acquire all the outstanding stock of American Mag no later than early 1988. | Option Agreement dated November 4, 1987, pg. 3, Exhibit A, ARE MSJ |
| | 19. | Three basic representations and warranties within the paragraph 2.40 of the Option Agreement are indisputably restricted in nature, a fact that is particularly clear when the provisions are read in context and as a whole.[1] The first merely states that there was no then | Option Agreement dated November 4, 1987, pgs. 33-34, Exhibit A, ARE MSJ |

---

[1]  In that regard, we note that ARE's Motion cites selective and incomplete portions of the paragraph, omitting language that reveals their limited scope.

-7-
SEPARATE STATEMENT OF ADDITIONAL FACTS IN DISPUTE AND CONCLUSIONS OF LAW
325153 v.2/2369.005

| | | | |
|---|---|---|---|
| | | existing litigation pending against any of the Companies, a fact that is not in dispute here.[2] The second provides that the conduct of the "Companies of their respective businesses as presently or ordinarily conducted does not" violate any existing federal, state, local or foreign law, including environmental protection laws and regulations. | |
| | 20. | This representation, by its own terms, reaches only to the then existing operations of the Companies, as that term is defined in the Option Agreement – and ¶ 1.1 of the Option Agreement defined the business of the Companies as their then existing business. | Option Agreement dated November 4, 1987, pg. 3, Exhibit A, ARE MSJ |
| | 21. | The ARE asserts that Hale failed to disclose that AHI – as one of the Companies being acquired – had previously "generated, stored, treated, transported, handled, disposed of, or released any hazardous substance or solid waste" | Option Agreement dated November 4, 1987, pg. 34 Exhibit A, ARE MSJ |

---

[2] Hale did present a list of ongoing litigation involving the Companies, and this representation was subject to that list.

| | | |
|---|---|---|
| | | in a manner that would give rise to litigation. | |
| 22. | The Option Agreement, at ¶ 12.2, calls for Hale to indemnify Noranda or its successors against any loss, cost liability or expense – notably excluding attorneys fees – incurred "by reason of the incorrectness or breach of any of" representations, warranties, covenants and agreements provided for in the contract. | Option Agreement dated November 4, 1987, pg. 71, Exhibit A, ARE MSJ |
| 23. | Paragraph 13.1.1 of the Option Agreement demands that Noranda or its successors negotiate with Hale to agree on the extent to which the claim, if valid, would constitute a breach of the representations and warranties, the measure of damages to Noranda or its successors, and a fair allocation of the expenses subject to the indemnity clause. | Option Agreement dated November 4, 1987, pg. 73, Exhibit A, ARE MSJ |
| 24. | Paragraph 13.1.4 of the Option Agreement provides, in turn, that if the parties cannot agree on the extent of shared responsibility, Noranda "shall have the | Option Agreement dated November 4, 1987, pg. 75, Exhibit A, ARE MSJ |

| | | | |
|---|---|---|---|
| | | responsibility to direct the manner in which the defense of such claim shall be conducted" and "Hale * * * shall be responsible only for such part of the liability as they shall have agreed to be their responsibility or as is so determined by a court of competent jurisdiction." | |
| | 25. | In mid-2009, counsel for KB Gardena Building, LLC ("KB") contacted Hale about this pending litigation and apparently discussed the possibility of him sitting for deposition. | Letter dated July 15, 2009 from Ervin Cohen & Jessup LLP to Ezra Brutzkus Gubner LLP |
| | 26. | KB issued of a subpoena to Hale on July 14, 2009, directing that he appear for deposition on August 11, 2009 in Palm Desert, California. | Subpoena to Testify at Deposition dated July 14, 2009 |
| | 27. | On May 3, 2010, Mr. David Giannotti, American Racing Equipment, LLC's ("ARE") counsel, advised Hale's counsel that "[b]y this letter, American Racing, LLC * * * hereby demands that Art Hale immediately indemnify American Racing for all fees and | Letter dated May 3, 2010 from David A. Giannotti to Ezra Brutzkus Gubner LLP |

| | | |
|---|---|---|
| | costs incurred to date" with respect to the litigation. | |
| 28. | Mr. Giannotti's demand was four months too late to satisfy ARE's obligations under the plain terms of ¶ 13.1.2. | |
| 29. | Hale did not accept Mr. Giannotti's demand. | Letter dated June 11, 2010 from Ezra Brutzkus Gubner LLP to David A. Giannotti |
| 30. | Hale's counsel, relying on the representations of KB's counsel to the effect that Hale was Ansen's former president and accepted service on his behalf and in that capacity. And Hale's counsel advised KB that Ansen was a suspended corporation and it "cannot act on its behalf, and we are not doing so now." | Declaration of Todd M. Lander, para. 9, pg. 5 |

## CONCLUSIONS OF LAW

1. A party moving for summary judgment maintains both the initial and ultimate burden of demonstrating that there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Federal Rules of Civil Procedure*, Rule 56(c).

2. Summary judgment is a "drastic remedy," and one that denies a party's right to present his case at trial, and therefore the moving party bears a "heavy

burden" of demonstrating the absence of any triable issue of fact. See *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2nd Cir. 1999).

3. In evaluating whether a party has discharged their burden, Federal Courts apply a burden-shifting analysis. The moving party carries the initial burden of showing a lack of material facts in dispute and, assuming it meets the test, the burden then shifts to opposing party to establish that triable issues are present - the final burden then rests with the movant. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

4. To defeat a motion for summary judgment, the opposing party must only introduce sufficient evidence from which a trier of fact could draw reasonable inferences that could be used to find in the opposing party's favor. See e.g. *Andrews v. United Airlines*, 24 F.3d 39, 41 (9th Cir. 1994).

5. Any agreement "must be so construed to give effect to the *mutual intention* of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." California Civil Code § 1636; see also *Shaw v. Regents of the Univ. of California*, 58 Cal.App.4th 44, 54 (1997); *and see San Joaquin v. Workers Comp. App. Bd.*, 117 Cal.App.4th 1180, 1184 (2004).

6. Contracting parties' intent, where possible, should be drawn solely from the language of the instrument. See California Civil Code §§ 1636 and 1638-1639.

7. Courts may go beyond the four corners of an agreement and resort to parol evidence only if: (1) a contract is reasonably susceptible to more than one interpretation; and (2) competent extrinsic evidence is produced and admitted. See *Pacific Gas & E. Co. v. G.W. Thomas Drayage etc.*, 69 Cal.2d 33, 37 (1969); accord, *General Motors Corp. v. Superior Court*, 12 Cal.App.4th 435, 441 (1993).

8. Under the doctrine of *expressio unius est exlcusio alterius* the law reflexively assumes as a result that, by *including* such clear and specific limiting

SEPARATE STATEMENT OF ADDITIONAL FACTS IN DISPUTE AND CONCLUSIONS OF LAW
325153 v.2/2369.005

language, parties intend to *exclude* matters outside that restrictive provision – namely, operations on properties other than the Listed Properties. *See e.g., Steven v. Fidelity & Cas. Co. of New York*, 58 Cal.2nd 862, 871 (1963).

9. All contracts are required to be interpreted as a whole and with each clause helping to interpret the other. *See Civil Code* § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practical, each clause helping to interpret the other.")

10. For purposes of "construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret." *California Code of Civil Procedure* § 1860; *see also Los Angeles County Metropolitan Transit Authority v. Shea-Kiewit-Kenny*, 59 Cal.App.4th 676, 683 (1997).

11. California courts should interpret a contract to render all the terms lawful, operative and capable of being carried into effect and avoiding any analysis resulting in any portion of the agreement unlawful or of no effect. *See Civil Code* §§ 1643 and 3541; *see also* 1 Witkin, *Summary of California Law*, 10th Ed. 2005, Contracts § 750, p. 840 (citing *Rest.2d, Contracts*, § 203(a) and *Civil Code* §§ 1643 and 3541, "an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful or of no effect.".

Dated: October 15, 2010

Respectfully submitted,

EZRA BRUTZKUS GUBNER LLP

By: /s/ D. T.
Todd M. Lander
David A. Tashroudian
Attorneys for Cross-Defendant, ART HALE, an individual

-13-
SEPARATE STATEMENT OF ADDITIONAL FACTS IN DISPUTE AND CONCLUSIONS OF LAW
325153 v.2/2369.005