# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

O

| | |
|---|---|
| KD GARDENA BUILDING, LLC, a California limited liability corporation, | )<br>)<br>) |
| Plaintiff, | ) No. ED CV 08-600 |
| v. | )<br>) Judge Robert W. Gettleman |
| WHITTAKER CORPORATION, a Delaware corporation; BRASSCRAFT MANUFACTURING COMPANY, a Michigan corporation; BIG "B" TRANSPORTATION, INC., a suspended California corporation; ALPHONSE VANBASTELAAR, an individual; INTERNATIONAL TRUCK AND TRANSFER, INC., a California corporation; A&M LUMBER AND BUILDING SUPPLY COMPANY, a business entity, form unknown, A&M LUMBER & WRECKING COMPANY, a business entity, form unknown; A&M FENCE COMPANY, a business entity, form unknown; CHROMIZING COMPANY, a suspended California corporation; CHROMALLOY AMERICAN CORPORATION, a Delaware corporation; ESTATE OF ARTHUR H. KAPLAN, deceased; ROSE MAY KAPLAN, an individual; STANLEY BLACK, an individual; JOYCE BLACK, an individual; KB MANAGEMENT COMPANY, a California general partnership; JACK D. BLACK, an individual; JANIS (GOLDMAN) BLACK TRUST, a California trust; JILL BLACK, an individual; K ASSOCIATES, a California general partnership; A&R MANAGEMENT AND DEVELOPMENT CO., a business entity, form unknown ANSEN, INC., a suspended California corporation; AMERICAN RACING EQUIPMENT, INC., a Delaware corporation; AMERICAN RACING EQUIPMENT, LLC, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

| | |
|---|---|
| AMERICAN RACING EQUIPMENT, LLC, a Delaware limited liability company, | ) ) ) |
| Cross Claimant, | ) ) ) |
| v. | ) ) ) |
| WHITTAKER CORPORATION, a Delaware corporation; BRASSCRAFT MANUFACTURING COMPANY, a Michigan corporation; BIG "B" TRANSPORTATION, INC., a suspended California corporation; ALPHONSE VANBASTELAAR, an individual; ESTATE OF ARTHUR H. KAPLAN, deceased; ROSE MAY KAPLAN, an individual; STANLEY BLACK, an individual; JOYCE BLACK, an individual; JACK D. BLACK, an individual; JILL BLACK, an individual; JANIS (GOLDMAN) BLACK TRUST, a California trust; KB MANAGEMENT COMPANY, a California general partnership; K ASSOCIATES, a California general partnership; A&R MANAGEMENT AND DEVELOPMENT CO., a business entity, form unknown; ART HALE, an individual; ANSEN, INC., a suspended California corporation; and LOUIS SENTER, an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Cross Defendants. | ) ) ) |
| AMERICAN RACING EQUIPMENT, LLC, a Delaware limited liability company, | ) ) ) |
| Counter-Claimant, | ) ) ) |
| v. | ) ) ) |
| KB GARDENA BUILDING, LLC, a California limited liability corporation, | ) ) ) |
| Counter-Defendant. | ) |

2

## MEMORANDUM OPINION AND ORDER

In this complicated action brought under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et all, plaintiff KB Gardenia Building, LLC, the current owner of the property located at 13720 S. Western Avenue, Gardenia, CA (the "Property"), has sued a number of past owners and entities that occupied the Property from the late 1970s through 2006, seeking the costs of remediating soil and ground water contamination. Among the entities sued is defendant American Racing Equipment, LLC ("ARE"). ARE in turn has sued third-party defendant Art Hale ("Hale") for breach of an indemnification agreement, seeking both indemnity and the costs of defending the instant suit. ARE has moved for summary judgment against Hale. For the reasons explained below, ARE's motion is denied.

## BACKGROUND

From the late 1960s into the late 1980s Hale owned an interest in several business that manufactured and sold automobile wheels. Of particular interest to the instant dispute are Art Hale, Inc. ("AHI") which he incorporated in 1967, Ansen, Inc. formed in 1975, Modern Wheel formed in 1977, and American Mag formed in 1982. By late 1987 AHI and Modern Wheel were wholly owned subsidiaries of America Mag. Hale was the sole shareholder of American Mag.

In 1972 Lewis Senter, Betty Senter and Sidney Senter ("the Senters") owned the Property. Defendant Whittaker Corp. leased the property in 1972 and began manufacturing automobile wheels and other parts through a division named Ansen Automotive Division ("Ansen Automotive"). By March 1975 Ansen Automotive was in financial trouble and Hale wanted to acquire the name and certain parts used at the Property. He and others incorporated

3

Ansen, Inc. on March 12, 1975, and Ansen, Inc. purchased the assets of Ansen Automotive (including trademarks and intellectual property) that same day. The total purchase price was $500,000 for which AHI served as guarantor.

Ansen, Inc. subleased and took over operations at the Property in 1975, but liquidated most of the hard assets and equipment and then manufactured wheels using its own process. Ansen, Inc. did not succeed, however, and terminated operations in March 1977. Ansen, Inc. has been defunct since that time and neither it nor any other entity in which Hale owns an interest has conducted any operations at the Property since then time.

Hale continued to sell wheels for his companies, including AHI, Modern Wheel, and American Mag. On November 4, 1987, Hale granted ARE's predecessor, Noranda Wheels, Inc., an option (the "Option Agreement") to purchase all of the outstanding stock of American Mag, which by then owned AHI and Modern Wheel. Noranda exercised its option on February 11, 1988, purchasing the stock of American Mag and its subsidiaries AHI and Modern Wheel. The Option Agreement contains a list of the companies sold (the "Companies") as well as lists of the real properties owned and leased by those companies. Significantly, Ansen, Inc. was not among the Companies sold and the Property is not listed among the properties owned or leased by the Companies.

Noranda changed its name to ARE, Inc. in May 1988. In June 1988 AHI and Modern Wheel were merged into American Mag, which was then merged into ARE, Inc. In June 2008 ARE, Inc. converted to a limited liability company, ARE, LLC.

Plaintiff filed the instant action on May 5, 2008, but did not initially name ARE. Plaintiff named both ARE and Ansen, Inc. in a second amended complaint on November 10, 2009,

alleging that ARE is the successor in interest to AHI, that AHI is a "fictitious or trade name of Ansen, Inc. and that between at least March 7, 1975 and March 7, 1977, AHI conducted manufacturing operations at the Property . . . ."

On June 3, 2010, Whittaker filed its second amended answer, cross-claim, third-party claims and counterclaims that added Hale, AHI and American Mag as third-party defendants, alleging that Hale, AHI and American Mag d/b/a US Mag Wheels, Modern Wheel and American Mag, Inc. all simultaneously conducted wheel manufacturing operations at the Property, at which time hazardous substances were released into the environment.

## DISCUSSION

ARE has moved for summary judgment arguing that in the Option Agreement Hale agreed to indemnify it for any liability ARE may incur to either plaintiff or Whittaker, as well as the costs and expenses of defending the instant suit. Summary judgment is appropriate if the evidence demonstrates that there is a genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to identify portions of the pleadings, answers to interrogatories, and affidavits that demonstrate an absence of material fact. Id. at 323. The burden then shifts to the non-moving party to identify specific facts showing a genuine issue for trial. When reviewing a motion for summary judgment the court must read the facts in the light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The Option Agreement is governed by California law, which requires that contracts be construed so as to give effect to the mutual intention of the contracting parties. Nat'l Union Fire

Ins. Co. of Pittsburg v. Lawyer's Mutual Ins. Co., 885 F.Supp. 202, 204 (S.D. Cal. 1995); Cal. Civ. Code § 1636.  The first consideration in determining the parties' intent is the language of the contract itself.  If the language is clear and explicit, it governs.  Id.

When the parties disagree about the meaning of the contract, the court construes it using a two step process.  First, the court determines whether the contract is ambiguous or reasonably susceptible to either of the the meanings offered by the parties.  If the contract cannot be reasonably construed as a party suggests, even considering extrinsic evidence offered by that party, then the contract is not ambiguous, and the inquiry is over.  Oncology Therapeutics Network Connection v. Virginia Hematology Oncology PLLC, 2006 WL 334532 at * 4-5 (N.D. Cal. 2006).

If the contract is reasonably susceptible to either of the meanings offered, the court must determine "what the parties intended the contract to mean" by admitting any extrinsic evidence offered.  If there are no issues of material fact in dispute, the court construes the contract as a matter of law.  Id.

In the Option Agreement, Hale agreed to:

indemnify [ARE], . . . against any loss, cost, liability, or expense (including, without limitation, costs and expenses of litigation other than attorneys' fees) incurred by reason of the incorrectness or breach of any of [his] respective representations, warranties, covenants, and agreements contained in this option agreement . . .

The warranty provision in question provides in pertinent part that:

To the best of Hale's . . . knowledge and belief after due inquiry, neither the Companies nor their agents and affiliates (and none of the prior owners or users of the properties listed on the Real Property List) have ever generated, stored, treated, transported, handled, disposed of, or released any hazardous substance or solid waste in a manner that would give rise to any liability under any statute or government regulation, and neither Hale . . ., nor the Companies is aware of the

> current or past generation, storage, treatment, handling, disposal or release by any of the Companies or any prior owner or operator or any other person or entity of any hazardous substance or solid waste on or in any of the properties listed on the Real Property List other than in the ordinary course of business.

The contract also provides a method for determining the liability of Hale for third party claims. Hale's liability for breach of the representations and warranties he made in the Option Agreement with respect to claims made against ARE is determined as follows:

> If any claims shall be made against [ARE or the Companies] . . . which if valid, would result in liability on the part of Hale . . . for breach of any of [his] representations or warranties in this Option Agreement, notice in writing of such claims may be given by [ARE to Hale] . . .. Upon receipt of the notice by Hale . . ., [ARE] shall promptly negotiate in good faith with Hale . . . in an effort to agree on the extent to which such claim, if valid, would constitute a breach of any of [his] representations or warranties in this Option Agreement, upon the measure of damages to [ARE] . . . resulting therefrom, and upon the fair allocation among the parties of the expenses [of the litigation].

ARE argues that if plaintiff's claim against it -- that ARE is liable to plaintiff as a successor to Ansen, Inc. because AHI is "a fictitious or trade name of Ansen, Inc. –" is valid, then the loss to ARE would be incurred by reason of the incorrectness or breach by Hale of his warranty that none of the Companies or their agents or affiliates had ever generated, stored or released any hazardous substance that would give rise to liability. As discussed below, however, that is not necessarily correct.

First, Hale argues that ARE waived its right under the contract by failing to demand indemnity within 60 days of receiving written notice of plaintiff's claim. This is obviously incorrect. The contract provides that if a claim is made against ARE "notice in writing of such claim[ ] may be given by [ARE] to Hale," and that ARE should promptly negotiate in good faith. If ARE fails to give notice of a claim within 60 days then Hale has no liability. Nothing in the

contract, however, requires ARE to demand indemnification within 60 days, and it is undisputed that ARE gave timely notice to Hale of plaintiff's claims against ARE.

Hale's argument that the scope of his representations and warranties is limited to the "company's operations at the listed properties" is also incorrect. Section 2.4 of the agreement plainly states that "to the best of Hale's . . . knowledge and belief after due inquiry, neither the Companies nor their agents and affiliates (<u>and</u> none of the prior owners or users of the properties listed on the Real Property list) have ever generated, stored, treated . . . any hazardous substances in a manner that would give rise to liability." (Emphasis added). These representations very clearly relate to any of the Companies and their agents and affiliates in addition to any prior owner or user of the properties listed. As ARE notes, there were no properties listed in the list of Real Properties owned by the Companies, and any suggestion that the representations and warranties covered only those properties would render those representations and warranties meaningless.

Much more meritorious is Hale's argument that the record contains no evidence that even if plaintiffs' claim that AHI is a fictitious name for Ansen, Inc. is correct, Hale necessarily breached a warranty. Hale warranted only that "to the best of [his] knowledge and belief after due inquiry" no Company ever stored or released hazardous material in a manner that would give rise to liability. Even assuming that the Property is covered by the warranty in the Option Agreement because AHI is in fact Ansen, Inc., the agreement was signed in 1988. It is undisputed that Ansen, Inc. vacated the property in 1977, four years before CERCLA (on which plaintiff bases its claims) was passed. There is simply no evidence in the record to suggest that in 1988, when he signed the Option Agreement, Hale had any knowledge that any hazardous

substance had been stored, treated or released on the Property in a manner that would give rise to liability. That contested fact alone is sufficient to deny summary judgment.

Moreover, the Option Agreement specifically provides for the instant situation, where ARE has given Hale notice of a claim and these parties were unable to reach agreement on how to share responsibility. With respect to liability, ARE has the right to direct the defense of the claim (including payment or settlement) and, absent agreement, each party's responsibility shall then be determined by a court. Expenses of litigation are to be paid in the same percentage as liability if a claim has been sustained. If no part of the claim has been sustained the expenses of contesting such claims shall be paid by the party incurring them. Contrary to ARE's assertion in its motion for summary judgment, nothing in the contract suggests that Hale has a duty to defend ARE or to pay ARE's expenses of litigation prior to a judicial decision on the validity of plaintiff's claim. Accordingly, ARE's motion for summary judgment is denied.

## CONCLUSION

For the reasons described above, ARE's motion for summary judgment is denied.

**ENTER:**     **January 3, 2011**

_____
**Robert W. Gettleman**
**United States District Judge**