# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# EASTERN DIVISION

O

| | |
|---|---|
| KB GARDENA BUILDING, LLC, a California limited liability corporation, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>WHITTAKER CORPORATION, a Delaware corporation; BRASSCRAFT MANUFACTURING COMPANY, a Michigan corporation; BIG "B" TRANSPORTATION, INC., a suspended California corporation; ALPHONSE VANBASTELAAR, an individual; INTERNATIONAL TRUCK AND TRANSFER, INC., a California corporation; A&M LUMBER AND BUILDING SUPPLY COMPANY, a business entity, form unknown, A&M LUMBER & WRECKING COMPANY, a business entity, form unknown; A&M FENCE COMPANY, a business entity, form unknown; CHROMIZING COMPANY, a suspended California corporation; CHROMALLOY AMERICAN CORPORATION, a Delaware corporation; ESTATE OF ARTHUR H. KAPLAN, deceased; ROSE MAY KAPLAN, an individual; STANLEY BLACK, an individual; JOYCE BLACK, an individual; KB MANAGEMENT COMPANY, a California general partnership; JACK D. BLACK, an individual; JANIS (GOLDMAN) BLACK TRUST, a California trust; JILL BLACK, an individual; K ASSOCIATES, a California general partnership; A&R MANAGEMENT AND DEVELOPMENT CO., a business entity, form unknown ANSEN, INC., a suspended California corporation; AMERICAN RACING EQUIPMENT, INC., a Delaware corporation; AMERICAN RACING EQUIPMENT, LLC, )<br>)<br>Defendants. ) | No. ED CV 08-600<br><br>Judge Robert W. Gettleman |

| | |
|---|---|
| AMERICAN RACING EQUIPMENT, LLC, a Delaware limited liability company, | ) ) ) |
| Cross Claimant, | ) ) ) |
| v. | ) ) ) |
| WHITTAKER CORPORATION, a Delaware corporation; BRASSCRAFT MANUFACTURING COMPANY, a Michigan corporation; BIG "B" TRANSPORTATION, INC., a suspended California corporation; ALPHONSE VANBASTELAAR, an individual; ESTATE OF ARTHUR H. KAPLAN, deceased; ROSE MAY KAPLAN, an individual; STANLEY BLACK, an individual; JOYCE BLACK, an individual; JACK D. BLACK, an individual; JILL BLACK, an individual; JANIS (GOLDMAN) BLACK TRUST, a California trust; KB MANAGEMENT COMPANY, a California general partnership; K ASSOCIATES, a California general partnership; A&R MANAGEMENT AND DEVELOPMENT CO., a business entity, form unknown; ART HALE, an individual; ANSEN, INC., a suspended California corporation; and LOUIS SENTER, an individual, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Cross Defendants. | ) ) |
| AMERICAN RACING EQUIPMENT, LLC, a Delaware limited liability company, | ) ) ) |
| Counter-Claimant, | ) ) ) |
| v. | ) ) ) |
| KB GARDENA BUILDING, LLC, a California limited liability corporation, | ) ) ) |
| Counter-Defendant. | ) |

2

## MEMORANDUM OPINION AND ORDER

In this action brought under the under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 et seq, plaintiff KB Gardena Building, LLC, the current owner of the property located at 13720 S. Western Avenue, Gardena, CA (the "Property"), has sued a number of past owners and entities that occupied the Property from the late 1970s through 2006, seeking the costs of remediating soil and ground water contamination. Among the entities sued are Whittaker Corp., and American Racing Equipment, LLC ("ARE"). ARE sued Art Hale ("Hale") for breach of an indemnity agreement, seeking indemnification and the costs of defending the instant action. Whittaker has filed cross-claims against ARE and third-party claims against Hale for recovery under CERCLA, contribution under the California Hazardous Substance Act, contractual indemnity/contribution, and claims for equitable relief. ARE and Hale have reached a settlement with plaintiff, and have moved for a determination that the settlement was reached in good faith and that no party may pursue any claim for contribution and/or indemnity against Hale and ARE, including any claims for relief predicated on the cost allocation or contribution provisions of 42 U.S.C. § 9607 or 42 U.S.C. § 9613. Only Whittaker has opposed the motion. For the reasons discussed below, the motion is granted.

## BACKGROUND

From the late 1960s into the late 1980s Hale owned an interest in several business that manufactured and sold automobile wheels. Among those businesses were Art Hale, Inc. ("AHI") incorporated in 1967, Ansen, Inc., formed in 1975, Modern Wheel formed in 1977, and

American Mag formed in 1982. By late 1987 AHI and Modern Wheel were wholly owned subsidiaries of America Mag. Hale was the sole shareholder of American Mag.

In 1972 Whittaker leased the property from the then owners Betty and Sidney Senter (the "Senters"), and began manufacturing automobile wheels and other parts through its Ansen Automotive Division ("Ansen Automotive"). By March 1975 Ansen Automotive was in financial trouble and Hale wanted to acquire the name and certain parts used at the Property. He and others incorporated Ansen, Inc. on March 12, 1975, which purchased the assets of Ansen Automotive (including trademarks and intellectual property) that same day. The total price was $500,000. AHI served as guarantor.

Ansen, Inc. subleased and took over operations at the Property in 1975, but liquidated most of the hard assets and equipment and then manufactured wheels using its own process. Ansen, Inc. was not successful and terminated operations in March 1977. Ansen, Inc. has been defunct since that time, and neither it nor any other entity in which Hale owned an interest has conducted any operations on the Property since that time.

Hale continued to own and sell wheels for AHI, Modern Wheel, and American Mag. In 1987 he granted ARE's predecessor, Noranda Wheels, Inc., an option to purchase all of the outstanding stock of American Mag, which by then owned AHI and Modern Wheel. Noranda exercised the option on February 11, 1988, purchasing the stock of American Mag and its subsidiaries AHI and Modern Wheel. The option agreement contained a list of companies sold and a list of real properties owned or leased by those companies. Ansen, Inc. was not listed among the companies sold, and the Property was not listed among the properties owned or leased by the companies sold.

Noranda changed its name to ARE, Inc. in May 1988. In June 1988 AHI and Modern Wheel were merged into American Mag, which was then merged into ARE, Inc. In June 2008 ARE, Inc. converted to a limited liability company, ARE, LLC.

## **DISCUSSION**

The most recent remedial action plan developed for the Property estimates remedial costs of $7.7 million. ARE and Hale together have agreed to pay $1.5 million, which is approximately 20% of the estimated costs. In this motion they seek (a) a determination that the settlement was reached in good faith, and (b) a "bar order" proscribing any contribution claims against them. Such orders are common in complicated CERCLA actions such as the instant case, involving both federal and state law. See AmeriPride Services Inc. v. Valley Indus., 2007 WL 1946635, *2 (Ed. Cal. 2007) (and cases cited therein).

To determine whether a settlement has been reached in good faith and, in turn, whether a contribution bar should attach, courts within the Ninth Circuit have borrowed the criteria employed in interpreting California Code of Civil Procedure § 877.6. See e.g., Federal Savings & Loan, Ins. Co. v. Butler, 904 F.2d 505, 511 (9th Cir. 1990); AmeriPride, 2007 WL 1946635 at *3. The criteria used to determine whether a settlement is made in good faith under § 877.6 are set out in Tech-Bilt, Inc. v. Woodward-Clyde & Assoc., 38 Cal.3d 488, 4999-500 (1985), and include: (1) a rough approximation of plaintiff's total recovery and the settler's proportionate liability; (2) the amount paid in settlement; (3) a recognition that a settler should pay less in settlement than if found liable after trial; (4) the allocation of the settlement proceeds; (5) the settling party's financial condition and the availability of insurance; and (6) evidence of any

collusion, fraud or tortious conduct between the settler and the plaintiff aimed at requiring the non-settling parties to pay more than their fair share.

Based on the Tech-Bilt factors, the court concludes that the settlement qualifies as a good faith settlement under § 877.6.  The first two factors are the most important because they determine whether the settlement is "in the ball park" when assessing plaintiff's prospective recovery as against the settling defendant's proportionate liability.  Id. At 499.  In the instant case the court concludes that the $1.5 million settlement is well within ARE and/or Hale's potential liability.

First, there is little evidence of liability on ARE's part.  The evidence demonstrates that ARE never owned or operated any entity on the Property.  The purchase documents show that it did not purchase Ansen, Inc., and the Property was not listed among any properties leased by the companies sold by Hale to ARE.  There is some evidence against Hale, but that too is weak.  There is little or no evidence that Ansen, Inc. contributed to the contamination (what little evidence there is about Ansen, Inc.'s operations show that it did not use PCE, the contaminant in question), and no credible evidence that Hale himself acted as an operator within the meaning of CERCLA, 42 U.S.C. § 9607(a).

Whittaker has raised only two serious objections to settlement.  First, it argues that because Ansen, Inc. acquired a degreaser that utilized solvents like the one found at the Property, both ARE and Hale should be responsible for at least 50% of the proposed remediation costs.  As noted above, however, there is no evidence that ARE was involved with the site at all, and little evidence that Hale could be found personally liable as an operator.  In addition, ARE and Hale deny that the degreaser was ever used after the Whittaker/Ansen, Inc. sale.  Thus, $1.5 million

payment constituting 20% of the proposed remediation costs is well within the ball park of plaintiff's prospective recovery against ARE and Hale..

Finally, Whittaker argues that even if the court determines that the settlement is in good faith, the bar order cannot bar Whittaker's express contractual indemnity claim. See Bay Development, Ltd. v. Superior Court, 50 Cal3d. 1012, 1031-32 (1990) (good faith settlement bars claims for implied contractual indemnity, but not express contractual indemnity). Whittaker's second amended answers, counterclaims and third party claims, however, contain no express contractual indemnity claims against ARE and/or Hale. The Whittaker/Ansen sublease contains no indemnity provision obligating Ansen to indemnify Whittaker, and the March 1975 purchase and sale agreement between Ansen, Inc. and Whittaker contains an indemnity provision running only from Whittaker to Ansen, Inc. Thus, Whittaker has not brought and cannot bring an express contractual indemnity claim against Hale and/or ARE. Any implied indemnity claim that Whittaker may have will be barred by this court's determination that the settlement is in good faith.

## CONCLUSION

For the reasons stated above, the court grants Hale and ARE's motion for determination of good faith settlement and enters the proposed order submitted with the motion.

**ENTER:** **January 30, 2012**

*/s/ Robert W. Gettleman*
**Robert W. Gettleman**
**United States District Judge**

7